511 P.2d 175

**HORIZON CORPORATION, a corporation, Appellant,**

**v.**

**The HOME INSURANCE COMPANY, a corporation, and the Home Indemnity Company, a corporation, Appellees.**

**No. 2 CA–CIV 1371.**

Court of Appeals of Arizona, Division 2.

June 21, 1973.

Rehearing Denied July 17, 1973.

Review Denied Sept. 25, 1973.

J. C. Padilla, Tucson, for appellant.

Everett, Bury & Moeller, P. C., by David C. Bury, Tucson, for appellees.

HOWARD, Judge.

The facts of this controversy appear to be as follows. Plaintiff Horizon Corporation [hereinafter referred to as Horizon] is in the business of selling subdivided land located in several western states. Defendants, Home Insurance Company and Home Indemnity Company [hereinafter referred to as Home] are in the business of providing various forms and kinds of insurance.

Horizon was issued by Home Insurance and Home Indemnity three Commercial Blanket Bond and Employee Dishonesty Endorsement to Business Owners Policies. These policies insured Horizon "against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees."

Sometime in January, 1970, Horizon started receiving numerous complaints from customers in the Atlanta, Georgia area that one of Horizon's employees, James L. Hamilton, had defrauded them. The letters claimed that Hamilton had assured the individual customers that Horizon would buy back their land in the future at a guaranteed profit to the customers and that he had misrepresented the value of the land and the improvements and facilities existing upon the subdivided land. About this time a customer of Horizon, one F. N. Warnock, filed suit in the Superior Court of Fulton County in the State of Georgia against Horizon and Hamilton alleging fraudulent representations by both and asking for $10,000 actual and $250,000 punitive damages.

Horizon repaid the dissatisfied customers and settled the Warnock suit for $16,000, resulting in a loss of $43,000 in commissions it had paid to Hamilton. Horizon notified Home of its losses and Home disclaimed liability. This lawsuit followed and from a judgment in favor of Home, Horizon appeals.

Appellant presents several questions for review. However, in its reply brief it states: "There is little dispute, as the matter now stands, that there was an absence of evidence at the trial to prove appellees' liability resulting from the dishonest acts committed by employee Hamilton. This, of course, is due to what appellant regards as error of the trial court in sustaining appellees' objection to the admissibility of the proffered letters and the Warnock complaint . . . ."

We agree that this issue is dispositive of the case and therefore will not discuss the other contentions of error.

At the trial Horizon attempted to introduce the letters submitted by the dissatisfied customers, the complaint filed by Warnock and a copy of the release and dismissal of the Warnock action. These exhibits were introduced to prove the fraudulent and dishonest acts of the employee Hamilton. Horizon claimed these documents to be business records such as would qualify under the Business Records as Evidence Act, A.R.S. § 12–2262 and Rule 44(q), Ariz.R.Civ.P., 16 A.R.S. The trial judge excluded the above mentioned exhibits as evidence. Since no other evidence was offered to prove the fraudulent and dishonest acts of Horizon's employee, the defendants prevailed.

A.R.S. § 12–2262, subsec. B provides:

". . . Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, *and if, in the opinion of the court, the sources of information, method and time of preparation were such as justify its admission.*" (Emphasis added)

As stated in Udall, Arizona Law of Evidence § 155:

"The admission of regular business entries is justified as an exception to the

**164**

hearsay rule on two grounds: (a) the element of *necessity* which often appears where a witness is dead, absent, or has handled so many similar transactions that he cannot have a specific recollection; (b) the element of *special trustworthiness* of entries made at the time of an event without any motive of falsification."

 Horizon contends that the letters received from its dissatisfied customers are business records of the company and therefore admissible. This court has stated:

"It is not every entry or document which a business or an institution may find it appropriate to have reflected in its records which is thereby admissible under the Business Records Rule." Snyder v. Beers, 1 Ariz.App. 497, 405 P.2d 288 (1965).

We have also cited with approval the following language in Bowman v. Kaufman, 387 F.2d 582 (2d Cir. 1967):

". . . the liberal interpretation to be accorded this legislation ' * * * does not mean that any particular business record may be admitted without careful scrutiny of its reliability for the purpose for which it is offered as evidence.' " Kemp v. Pinal County, 8 Ariz.App. 41, 442 P.2d 864 (1968).

The purpose of the authors of the letters was to induce Horizon to rescind the purchase contracts and repay the sums paid. These letters have no *special trustworthiness*. In fact, it was in the authors' best interest to embellish and exaggerate the circumstances of the sales in question in order to hasten Horizon's acquiescence to their demands. The trial judge properly excluded the letters as evidence.

The letters were not prepared "in the regular course of business at or near the time of the condition or event" as the statute requires. Cf., Murray v. Siegal, 413 Pa. 23, 195 A.2d 790 (1963). Neither were the complaint filed by Warnock or the

copy of the dismissal of the Warnock action. Although these documents, properly authenticated, could be offered in evidence as official documents, they are not admissible as business records.

As to the release, the error, if any, in failing to admit it into evidence was not prejudicial in view of the inadmissibility of the other documents.

Horizon contends that Home waived its objection to the admissibility of the letters from the dissatisfied customers because it questioned one of Horizon's witnesses concerning the contents of two of these letters.[1] However, Horizon made no attempt to re-offer these letters into evidence.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

1. We express no opinion as to whether Home waived its objections by this line of questioning.