## Commonwealth *v.* Coroniti, Appellant.

Argued April 27, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*James J. Gallagher,* with him *Daniel W. Kearney* and *John L. Pipa,* for appellant.

*Robert M. Fortney,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 15, 1944:

The defendant and his wife were the owners and occupants of the eastern half of a double frame dwelling located in Kulpmont, Northumberland County, which had been acquired by them in 1936 for the consideration of $1,700. About 9:15 P. M. on March 6, 1942, a fire, which had been preceded by an explosion, broke out in this house and it and several others in that immediate vicinity were consumed. Defendant and his wife carried $3,000 insurance on the building and $2,000 on its contents. The defendant was arrested and indicted on two bills of indictment. No. 48 May Session, 1942, charged arson, and No. 59 May Session, 1942, burning to defraud the insurer. Defendant was found guilty on both indictments. This appeal followed a

prison sentence imposed on the arson charge; on the other indictment sentence was suspended.

This appellant does not question the adequacy of the evidence. His assignments of error are confined to (1) an alleged violation of his constitutional rights against self incrimination; and (2) to the charge that the court committed error in refusing to compel a witness for the commonwealth, on cross examination, to give his street address.

During the course of the examination of Clayton Harris, an insurance agent called by the commonwealth, the following colloquy took place, which is the basis of defendant's first complaint. "Q. Do you know whether or not this policy was in force on March 6th, 1942? A. It was. Mr. Welsh: Just a moment. We object to that. The policy would be the best evidence of whether it was in force or not. The Court: If you will produce it, they will probably offer it in evidence. Mr. Welsh: We were not called upon to produce it. The Court: Well, probably counsel for the Commonwealth will ask you now. Do you want the policy Mr. Fortney? Mr. Fortney: Yes, we now call upon the defendant to produce the policy issued to him by Clayton Harris, the witness on the stand, and likewise the policy issued by William Wetzel, both to cover the real estate, and the personal property. The Court: You have no answer from the defendant. The objection is overruled. Go ahead. Mr. Welsh: We ask that the statement of the district attorney be stricken from the record. Mr. Fortney: You asked me if I wanted them. Mr. Welsh: No, the court asked you. I did not ask you anything. I am careful what I ask you."

In *Commonwealth v. Valeroso,* 273 Pa. 213, 116 A. 828, upon which appellant places much reliance, the defendant, who was charged with the crime of murder, lived in a house belonging to one Novak, who, through his attorney, wrote defendant threatening to evict him

from the house. The commonwealth made a demand upon the defendant in the presence of the jury to produce the letter, relying upon it as showing a motive for the murder of Novak. The Supreme Court ruled that the demand for the letter constituted a violation of defendant's privilege against self incrimination.

In the recent case of *Commonwealth v. Musto*, 348 Pa. 300, 35 A. 2d 307, it was held that a compulsory examination of defendant, in order to determine his physical and mental condition, was not a violation of his constitutional provisions forbidding the compelling of a defendant to give evidence against himself. The court held, p. 306: "The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner either before or at trial,—to prevent his being required to incriminate himself by speech or by the equivalent of speech."

Probably the leading case, certainly the one most frequently cited on the subject, is *McKnight v. U. S.*, (C. C. A. 6th—1902) 115 Federal 972. The defendant, the president of a bank, was charged with embezzlement of its funds. The government alleged that there was an agreement in the defendant's possession which tended to establish his guilt. A copy of the agreement was offered in evidence by the government and after some discussion the trial judge suggested that the district attorney might demand production of the original agreement. That was done in the presence of the jury. It was held that calling upon the defendant for the production of that document, which on its face showed a criminal intent, violated his constitutional immunity.

Professor Wigmore in his work on Evidence, Vol. 8, Third Edition 393, §2268, in criticism of this decision states that although defendant does not take the stand the giving notice to produce documents in his possession does not violate his constitutional rights. "This is be-

cause the accused's privilege as to his personal testimony is separate from his privilege as to his documents; ......"

In *Bain v. U. S.*, (C. C. A. 6th—1920), 262 Federal 664, the decision was by the same court that passed upon the McKnight case a few years earlier. The defendant and the cashier of a bank were indicted for conducting certain transactions with intent to defraud. Some of the papers evidencing their dealings, upon which the government relied, were in the cashier's possession and a demand was made at the trial for them. The court stated that the action constituted error as it was an attempt to compel a defendant to testify against himself, but it held that as there was secondary evidence at hand to prove the same facts and it could not be said that the evidence covered by the demand was highly incriminatory, therefore, it was not reversible. In the case at bar the evidence showed that the day after this fire the defendant filed under the terms of the policies proofs of loss.

In *Gridley et al. v. U. S.*, (C. C. A. 6th) 44 Fed. 2d. 716, 736 (writ of certiorari denied, 283 U. S. 827, 1931, 75 L. Ed. 1441, 51 S. Ct. 351), Gridley, an attorney, was prosecuted for using the mails to defraud. A witness testified to the mailing of a registered letter containing 3 bank drafts, which were identified and introduced in evidence. Objection was made that the envelope and letter were the best evidence. The court thereupon asked the prosecuting attorney to give notice to the defendant to produce the envelope and letter, which was done. It was held that as the contents of the letter were not material or incriminatory, as in the *McKnight* case, supra, and that the "notice to produce was brought about by the appellant's frivolous objection" and was not prejudicial the defendant's constitutional rights of immunity were not violated. See, also, *Hanish v. U. S.*, (C. C. A. 7th—1915) 227 Federal 584, 586.

In *Sparks v. State,* (Ind. 1942) 42 N. E. 2d 40, defendant was prosecuted for procuring a third person to burn his automobile with intent to defraud the insurer. It was held that notice given defendant to produce the insurance policy before the trial was not a violation of his privilege against self incrimination, as the insurance was proved by other evidence and the defendant had admittedly filed proofs of loss with the company. For further authorities see Annotation "Calling upon accused in the presence of jury to produce document in his possession as violation of privilege against self incrimination." 110 A. L. R. 101, 119.

Furthermore, it must be borne in mind that the constitutional privilege against self incrimination may be waived by defendant's conduct: 8 Wigmore, Third Edition, 435, §2275; *State v. Sedam,* (Idaho), 107 P. 2d 1065, 1070. If no formal objection or exception be made it may be reasonably concluded that there was nothing affirmatively incriminatory or prejudicial in the demand: *U. S. v. Buckner,* (C. C. A. 2d—1940) 108 Federal 2d. 929.

In *Johnson v. Commonwealth,* 115 Pa. 369, 9 A. 78, 98, the defendant was on trial for murder and claimed a violation of the privilege against self incrimination when he was called upon to repeat certain words for the purpose of identification. No objection was made or exception taken to this action, and the request was conceded to by the defendant. The court stated, p. 395: "Having thus waived the right of objection and taken the chances of a favorable result, it would be contrary to every rule of practice to permit him [defendant] to take advantage of what was done, even if it was erroneous."

It is clear that even if we assume that an error was committed in the present case, it did not constitute a ground for a reversal for the following reasons: (1) the demand for production of the original policies was

the result of defendant's objection to the introduction of secondary evidence; (2) there was already in evidence the existence of the policies, as defendant, the day after the fire, filed proofs of loss with the insurance company; (3) no formal objection or exception was taken to the demand for the production of the policies other than the motion that the statement of the district attorney be stricken from the record; and (4) the policies were not incriminatory on their face, nor were they an essential part of the commonwealth's case as to the arson indictment on which sentence was imposed. Certainly the demand was not prejudicial to defendant as to that charge.

Little need be said concerning the trivial complaint that the trial judge unduly restricted the cross examination of the witness as it is devoid of merit. An investigator for the National Board of Fire Underwriters on cross examination gave the name of the town where he lived, but refused to give his house address. The court declined to order him to give that information. That was a matter, which, from the record before us had no bearing whatever on the issues involved in this case and did not affect the credibility of the witness. The scope of cross examination is largely within the sound discretion of the trial judge (*Conley v. Mervis,* 324 Pa. 577, 188 A. 350; *Short v. Allegheny Trust Company,* 330 Pa. 55, 198 A. 793) which was not abused in this instance.

Judgment is affirmed and the defendant is ordered to appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.