Opinion by
 

 Boss, J.,
 

 This is an appeal from a conviction of illegally assisting certain voters in Philadelphia in the general election of 1916. After his conviction by a jury, the defendant filed motions for arrest of judgment and a new trial. These motions were denied, sentence was duly imposed and this appeal followed,
 

 Section 1220 of the Pennsylvania Election Code, 1937 P. L. 1333, 25 PS 3060, provides in part as follows: “No elector shall be allowed to occupy a voting compartment or voting machine booth already occupied by another, except when giving assistance as permitted by this act.” The requirements for receiving assistance in voting are set forth in Section 1218, 25 PS 3058, which provides in part as follows: “(a) No voter shall be permitted to receive any assistance in voting at any primary or election, unless there is recorded upon his registration card his declaration that, because of illiteracy, he is unable to read the names on the ballot or on the voting machine labels, or that he has a physical disability which renders him unable to see or mark the ballot or operate the voting machine, or to enter the voting compartment or voting machine booth without assistance, the exact nature of such disability being recorded on such registration card, and unless the election officers are satisfied that he still suffers from the same disability. Before he shall be permitted to receive assistance, such voter shall state distinctly and audibly under oath or affirmation, which shall be administered to him by the judge of election, the reason why he requires assistance.”
 

 In support of his motion in arrest of judgment the defendant attacks the sufficiency of the indictment, which is as follows: “Joseph Fine ... on the fourth day of November . . . one thousand nine hundred and forty-six ... in the twenty-first election district or division of the twentieth ward of the city of Philadelphia,
 
 *112
 
 at the General Election . . . did then and there unlawfully assist a voter thereof, to wit, one Elmira Norris in preparing the voting machine for voting, and who voted in said election district or division of said ward of said city, without the said Elmira Norris having had recorded upon her registration card her declaration, that, because of illiteracy, she was unable to read the names on the voting machines, or that she . . . had a physical disability which rendered her unable to see or operate said voting machine without assistance, and without . . . stating distinctly and audibly under oath or affirmation, administered to her by the judge of election, the reason why she required assistance; contrary to the form of the act of the General Assembly . . .” Additional counts using the same language alleging that the defendant unlawfully assisted other named voters áre included in the indictment.
 

 The essential element of crime, unless otherwise declared by statute, is the intent to commit it, or the wilfulness of it.
 
 Com. v.
 
 Junkin, 170 Pa. 194, 32 A. 617. “Ordinarily intent is a necessary ingredient of a criminal offense, but there are well recognized exceptions to this rule, as respects acts made criminal by statute. The subject is treated in Greenleaf on Evidence (vol. 3, sec. 21) as follows: ‘Ignorance or mistake of fact may in some cases be admitted as an excuse; as where a man intending to do a lawful act, does that which is unlawful. . . . This rule would seem to hold good in all cases when the act, if done knowingly, would be malum in se. But where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. . . ”
 
 Com. v. Liberty Products Co.,
 
 84 Pa. Superior Ct. 473, 475-476;
 
 *113
 

 Com. v. Borek,
 
 161 Pa. Superior Ct. 200, 203-204, 54 A. 2d 101.
 

 The defendant contends that the indictment does not charge a crime because it fails to state that he knew that the voters whom he assisted had not qualified for assistance, i.e., it fails to charge that he had guilty knowledge or intent. Whether a criminal intent, or a guilty knowledge is a necessary ingredient of a statutory offense is a matter of construction to be determined from the language of the statute, and in view of the manifest, purpose and design of the same.
 
 Com. v. Weiss,
 
 139 Pa. 247, 21 A. 10. As we stated in
 
 Com. v. Hackney,
 
 117 Pa. Superior Ct. 519, at page 524, 178 A. 417: “Direct proof of a guilty intent is not always necessary in a prosecution for violation of a statute. Whether it is incumbent upon the Commonwealth to show a criminal knowledge or intent as an essential ingredient of a statutory offense is generally a matter of construction, to be determined by the language of the statute.”
 

 The definition of illegal assistance in voting is set forth in Section 1830 of the Election Code, 25 PS 3530, which provides in part as follows: “. . . any person who shall go into the voting compartment or voting machine booth with another while voting or he present therein while another is voting, or mark the ballot of another or prepare the voting machine for voting with another, except in strict accordance with the provisions of this act . . . shall he guilty of a misdemeanor . . .” Defendant’s contention raises the question: Does section 1830 make guilty knowledge an essential element of the crime of rendering illegal assistance to a voter?
 

 The reasons for sustaining legislation which makes certain acts crimes and punishable as such without regard to defendant’s motive, intent, reasonableness or good faith, are stated to be: (1) To require a degree of diligence for the protection of the public and (2) con
 
 *114
 
 venience of enforcement. Both of these reasons are applicable to the question before us. As stated by the learned court below: “Secrecy of the ballot is so ingrained in our democratic process that anyone should know he has no right inside the voting booth with another voter without express legal authority. . . . The restrictions upon giving assistance are in furtherance of the secrecy of the ballot. ... I do not believe that the Commonwealth need prove additional negatives or the defendant’s knowledge of negatives. It would be an impossible task to show that defendant knew that the voters he assisted were not qualified for it, and to require proof from the election officials that he made no inquiry about them would be an unreal requirement under even ordinary election conditions.” Section 1830 makes no mention of a requirement of guilty knowledge. However, it may be inferred that it was the legislative intent not to require such guilty knowledge, if we apply the canon of construction suggested in
 
 Com. v. Jackson,
 
 146 Pa. Superior Ct. 328, 22 A. 2d 299, affirmed per curiam in 345 Pa. 456, 28 A. 2d 894, in which, referring to the Milk Control Act, Judge Hirt stated at page 333: “Other sections of the act, imposing other duties . . . specifically provide that proof of guilty knowledge or intent
 
 is
 
 essential to impose liability for failure to perform them”, and after pointing out that the requirement of knowledge was not set out in the section under consideration, he stated:
 
 “The omission is
 
 significant(Italics supplied.) What was said in the
 
 Jackson
 
 case is applicable here since other sections of the Election Code—e.g., sections 1812, 1813, 1833, 1834—require guilty knowledge. We conclude, therefore, that it was the legislative intention not to require a guilty knowledge that the assisted voters were not qualified for assistance as a condition precedent to guilt under section 1830. Consequently, the trial
 
 *115
 
 court did not err in refusing defendant’s motion for arrest of judgment.
 

 In support of Ms motion for a new trial the defendant contends first that the trial court committed error in limiting the defendant’s cross examination of two of the Commonwealth’s witnesses, Shelton and Eberon. Each of these witnesses testified to having seen defendant go into the voting booth with a named voter. On cross examination counsel for the defendant sought to ask them their reasons for being at the polling place on election day. In each case the trial court refused to allow the witness to answer the question.
 

 The question asked of the witness Shelton was on recross examination,
 
 [1]
 
 and it appears from the record that the court had permitted counsel for the defendant to ask essentially the same question on cross examination.
 
 [2]
 
 On direct examination the witness Eberon testified that he had been in a hallway of a building near the polling place. On cross examination, counsel for the defendant asked the witness: “Why did you go into the hallway of that building . . .?” The Commonwealth’s objection that it was immaterial why the witness went into the hallway was sustained by the trial court. The defendant also complains of the latitude allowed the Commonwealth in examining one of its witnesses.
 

 A trial judge is necessarily vested with broad powers to control the course of a trial.
 
 Thompson v. American Steel & Wire Co.,
 
 317 Pa. 7, 175 A. 541;
 
 D’Allura v. Perri,
 
 138 Pa. Superior Ct. 261, 10 A. 2d 124. The scope of cross examination is largely within the sound discretion of the trial judge
 
 (Com. v. Coroniti,
 
 155 Pa. Superior Ct. 131, 38 A. 2d 397), and unless the exercise of this discretion, although erroneous, results in apparent
 
 *116
 
 injury, it is not ground for reversal.
 
 Com. v. Craven,
 
 138 Pa. Superior Ct. 436, 11 A. 2d 191;
 
 Conley v. Mervis,
 
 324 Pa. 577, 188 A. 350.
 

 Prom our examination of the record we are not convinced that the learned trial judge committed “injurious” error in exercising his discretionary powers, either in limiting the cross examination of two of the Commonwealth’s witnesses or in refusing to limit the testimony of another.
 

 The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas,
 

 [1]
 

 Record 53a.
 

 [2]
 

 Record 51a.